CARTER, Judge.
This is an appeal from a trial court judgment awarding permanent alimony.
FACTS
Appellant, Jonathan Barry Gipson, and appellee, Rachel Watts Gipson, were married in West Feliciana Parish on June 5, 1982, and thereafter established their matrimonial domicile in East Baton Rouge Parish.
On September 7, 1985, after a period of marital discord, Mrs. Gipson left the matrimonial domicile and remained absent for approximately five months. During this time, Mr. Gipson requested that she return, but did not institute any separation proceedings against his wife.
On or about February 10, 1986, Mrs. Gipson returned to the couple’s home where Mr. Gipson still resided. The couple resided together for approximately three weeks, when Mr. Gipson left the matrimonial domicile on or around February 28, 1986, and thereafter refused to return.
On June 5, 1986, Mrs. Gipson filed a suit for separation against Mr. Gipson on the grounds of mental cruelty and abandonment. Mrs. Gipson also requested alimony pendente lite.
On November 14, 1986, Mr. Gipson answered the separation suit and filed a re-conventional demand for a legal separation based on Mrs. Gipson’s fault and prior abandonment and, alternatively, a divorce based on the grounds of living separate and apart for over one year.[1] Thereafter, on April 15, 1987, Mrs. Gipson answered Mr. Gipson’s petition for divorce and requested arrearages on alimony pendente lite as well as permanent alimony.
After a trial on the merits on April 27, 1987, the trial court granted Mr. Gipson a divorce “a vinculo matrimoni.” The trial court also found Mrs. Gipson to be free from fault and awarded her permanent alimony in the amount of $250.00 per month.[2]
From this judgment, Mr. Gipson appeals. Mr. Gipson asserts that the trial court erred in finding Mrs. Gipson free from fault and in awarding her permanent alimony and raises the following issues:
(1) Whether a spouse who leaves the marital domicile but subsequently returns may be found to be free from fault and therefore entitled to permanent alimony?
(2) Whether Mrs. Gipson’s other acts of fault were sufficient to constitute legal fault?
LAW
LSA-C.C. art. 160 provides in part:
A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimo *588 ny which shall not exceed one-third of his or her income. (Emphasis added)
Fault, which precludes alimony under LSA-C.C. art. 160, is synonymous with “fault” provided as a grounds for separation and divorce under LSA-C.C. art. 138 and 139. Fontenot v. Ardoin, 497 So.2d 1052 (La.App.3rd Cir.1986). The meaning of fault within the context of this codal article was discussed by the Louisiana Supreme Court in Pearce v. Pearce, 348 So.2d 75 (La.1977) as follows:
We have held that, under this statute respecting an award of alimony to a wife without “fault,” the word “fault” contemplates conduct or substantial acts of commission or omission by the wife viola-tive of her marital duties and responsibilities. A wife is not deprived of alimony after divorce simply because she was not totally blameless in the marital discord. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Davieson v. Trapp, 223 La. 776, 66 So.2d 804 (1953); Breffeilh v. Breffeilh, 221 La. 843, 60 So.2d 457 (1952); Adler v. Adler, 239 So.2d 494 (La.App. 4th Cir.1970). To constitute fault, a wife’s misconduct must not only be of a serious nature but must also be an independent contributory or proximate cause of the separation. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958). [348 So.2d at 77] (Emphasis added)
See also Moore v. Moore, 393 So.2d 822 (La.App.2nd Cir.1981).
When the divorce is based on a no-fault basis, namely when an absolute divorce is granted pursuant to LSA-R.S. 9:301 based on living separate and apart for one year, the spouse seeking post-divorce alimony carries the burden of establishing that she was without fault. Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959). See also Lagars v. Lagars, 491 So.2d 5 (La.1986).
In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Pearce v. Pearce, supra; Trosclair v. Trosclair, 337 So.2d 1216 (La.App. 1st Cir. 1976). Further, questions of a spouse’s freedom from fault under a statute respecting an award of alimony are factual, and the trial court’s finding on the issue will not be disturbed on appeal unless it is manifestly erroneous. Moore v. Moore, supra.
MRS. GIPSON’S ALLEGED ABANDONMENT
In the instant case, Mr. Gipson contends that Mrs. Gipson’s action of leaving the matrimonial domicile constitutes abandonment or fault, precluding her from receiving alimony.
Abandonment under Louisiana law is statutorily defined in LSA-C.C. art. 143, which provides:
Separation grounded on abandonment by one of the parties can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling, without a lawful cause, has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed; provided, however, that separation grounded on abandonment may be the object of a reconven-tional demand in any suit for separation from bed and board.
A. Constant Refusal to Return
LSA-C.C. art. 143 specifically requires that an abandoning spouse constantly refuse to return to the common dwelling.
The trial court found, and the facts support, that Mrs. Gipson, after absenting herself from the matrimonial domicile for a period of almost five months, returned to the matrimonial domicile and did not constantly refuse to return. Contrarily, the evidence demonstrated that Mrs. Gipson did return to the matrimonial domicile with the intention of remaining.
*589 B. Timely Return
Mr. Gipson contends, although his wife returned to the matrimonial domicile, her return was “untimely,” citing Woodward v. Woodward, 229 So.2d 167 (La.App. 2nd Cir. 1969) and Sciortino v. Sciortino, 188 So.2d 224 (La.App. 4th Cir.1966). Mr. Gipson reasons that because Mrs. Gipson’s return was untimely, her act of leaving constituted abandonment.
Mr. Gipson’s reliance on this line of jurisprudence is misplaced. The jurisprudence cited by Mr. Gipson provides that a “timely return” to the matrimonial domicile will defeat or nullify an abandonment. The “timely return” rule was created to determine whether a return nullifies a claim of abandonment in a separation proceeding. Sciortino v. Sciortino, supra. If a spouse’s return is found to be timely, the only result is that the grounds of abandonment are no longer available to the other spouse. Thereafter, in order to proceed for separation, other grounds must be utilized. Woodward v. Woodward, supra. Timeliness of a spouse’s return prior to the institution of judicial proceedings is not a relevant inquiry in a subsequent abandonment action.
The trial court correctly found that Mrs. Gipson had a right to return to the matrimonial domicile and that Mr. Gip-son had an obligation to accept his wife’s return. The court further found that although Mr. Gipson spent some nights away from home after his wife returned, he lived with his wife for approximately three weeks when he then manifested his intention to leave by moving his belonging from the home. However, Mrs. Gipson’s return to the matrimonial domicile prior to the institution of separation or divorce proceedings nullified any prior “abandonment.”
Accordingly, the trial court determined that the evidence presented established that Mrs. Gipson did not abandon her husband so as to preclude her from receiving permanent alimony.
MRS. GIPSON’S OTHER ALLEGED ACTS OF FAULT
Mr. Gipson alleges numerous other acts of his wife’s fault, which would allegedly preclude her from receiving alimony. He asserts among other things that she gained weight, failed to wear make-up, kept two cats, and failed to keep the house tidy.
After thoroughly examining the evidence regarding fault on the part of Mrs. Gipson, the trial court determined, and we agree, that although Mrs. Gipson may have been guilty of some misconduct, such misconduct was not of such a nature so as to constitute fault and preclude her from receiving alimony. See Pearce v. Pearce, supra.
MR. GIPSON’S FAULT
The party claiming permanent alimony must prove that he is without fault. The other party’s fault is not relevant unless it is used as a basis for determining a legal cause for leaving. In the instant case, the legal cause for Mrs. Gipson’s departure from the home has been rendered moot by the trial court’s finding that her conduct did not amount to abandonment under LSA-C.C. art. 143. Therefore, for alimony purposes, Mr. Gipson’s fault is not at issue.
CONCLUSION
For the above reasons, the judgment of the trial court awarding Mrs. Gipson permanent alimony is affirmed at appellant’s costs.
AFFIRMED.

. At this time, the requisite one year period between physical separation and institution of divorce proceedings had not yet elapsed. However, the passage of time and a subsequent amendment of Mr. Gipson’s petition on February 23, 1987, rendered this issue moot.

. Arrearages were also awarded, but these sums are not contested.